IN THE UNITED STATES DISTRICT COURT FOR THE
NORTHERN DISTRICT OF FLORIDA
PANAMA CITY DIVISION


JAMES E. BRANNING,

      Plaintiff,

vs.                                            CASE NO. 5:04cv272-RH/WCS

JO ANNE B. BARNHART,
Commissioner of Social Security,

      Defendant.

_____/


## REPORT AND RECOMMENDATION

      This is a social security case referred to me for a report and recommendation pursuant to 28 U.S.C. § 636(b) and local rule 72.2(D).  It is recommended that the decision of the Commissioner be affirmed.

**I.**      **Procedural status of the case**

      Plaintiff, James E. Branning, initially applied for a period of disability and disability insurance benefits.  By decision dated June 5, 2001, he was granted a closed period of benefits from February 1, 1999, to February 1, 2000.  R. 35.  This finding was based upon his experience of lower back pain.  R. 32.  The Administrative Law Judge found a closed period, noting that "[a]ccording to the claimant's testimony, corroborated by the

evidence of record, the claimant's condition had improved so that he is able to return to full-time, unrestricted, successful work."  R. 34.  The ALJ found that Plaintiff could do sedentary work at the end of the closed period.  R. 14.

Plaintiff then filed another application for disability benefits, the one pending in this court.  Plaintiff was 52 years old at the time of the second administrative hearing, had a 12th grade education and one year of college, and had past relevant work as a data technician and a supply technician for the United States Army.  Plaintiff alleges disability due to degenerative disc disease in the lower back, hernia, and arthritis in the shoulder.  The Administrative Law Judge found that Plaintiff retained the residual functional capacity to do a significant range of light work, and is not disabled as defined by Social Security law.

## II.     Legal standards guiding judicial review

This court must determine whether the Commissioner's decision is supported by substantial evidence in the record and premised upon correct legal principles.  Chester v. Bowen, 792 F.2d 129, 131 (11th Cir. 1986).  "Substantial evidence is more than a scintilla, but less than a preponderance.  It is such relevant evidence as a reasonable person would accept as adequate to support a conclusion."  Bloodsworth v. Heckler, 703 F.2d 1233, 1239 (11th Cir. 1983)(citations omitted).  "The Commissioner's factual findings are conclusive if supported by substantial evidence."  Wilson v. Barnhart, 284 F.3d 1219, 1221 (11th Cir. 2002).  "If the Commissioner's decision is supported by substantial evidence we must affirm, even if the proof preponderates against it."  Phillips v. Barnhart, 357 F.3d 1232, 1240, n. 8 (11th Cir. 2004) (citations omitted).  The court

must give "substantial deference to the Commissioner's decision."  <u>Dyer v. Barnhart</u>,

395 F.3d 1206, 1211 (11th Cir. 2005).

A disability is defined as a physical or mental impairment of such severity that the

claimant is not only unable to do his previous work, "but cannot, considering his age,

education, and work experience, engage in any other kind of substantial gainful work

which exists in the national economy . . . ."  42 U.S.C. § 423(d)(2)(A).  A disability is an

"inability to engage in any substantial gainful activity by reason of any medically

determinable physical or mental impairment which can be expected to result in death or

which has lasted or can be expected to last for a continuous period of not less than 12

months . . . ."  42 U.S.C. § 423(d)(1)(A).  Both the "impairment" and the "inability" must

be expected to last not less than 12 months.  <u>Barnhart v. Walton</u>, 535 U.S. 212, 122

S.Ct. 1265, 1272, 152 L.Ed.2d 330 (2002).

The Commissioner analyzes a claim in five steps.  20 C.F.R. § 404.1520(a)-(f):

1.      Is the individual currently engaged in substantial gainful activity?

2.      Does the individual have any severe impairments?

3.      Does the individual have any severe impairments that meet or
        equal those listed in Appendix 1 of 20 C.F.R. Part 404?

4.      Does the individual have any impairments which prevent past
        relevant work?

5.      Do the individual's impairments prevent other work?

A positive finding at step one or a negative finding at step two results in disapproval of

the application for benefits.  A positive finding at step three results in approval of the

application for benefits.  At step four, the claimant bears the burden of establishing a

severe impairment that precludes the performance of past relevant work.  If the claimant

carries this burden, the burden shifts to the Commissioner at step five to establish that despite the claimant's impairments, the claimant is able to perform other work in the national economy.  Chester, 792 F.2d at 131; MacGregor v. Bowen, 786 F.2d 1050, 1052 (11th Cir. 1986).  If the Commissioner carries this burden, the claimant must prove that he or she cannot perform the work suggested by the Commissioner.  Hale v. Bowen, 831 F.2d 1007, 1011 (11th Cir. 1987).

## III.    Analysis

Plaintiff injured his back in 1996.  R. 15.  He developed severe pain in his lower back radiating to his left leg.  *Id*.  Diagnostic tests revealed a herniated lumbar disc at L4-L5.  *Id*.  Plaintiff underwent a foraminatomy of the nerve root and a discectomy.  *Id*. Plaintiff returned to work, but then had another back surgery at the L5-S1 level.  *Id*.  On January 19, 2000, a myelogram showed multiple bulging disks from L2-L3 through L4-L5 without evidence of nerve root compression.  *Id*.

In June, 2003, the Veteran's Administration assigned a 60% disability rating to Plaintiff.  R. 16.  However, the VA denied a finding of individual unemployability, finding that the evidence did not show that Plaintiff was unable to perform substantially gainful work due to his service connected disabilities.  *Id*.

The Administrative Law Judge determined that Plaintiff has the residual functional capacity to lift 20 to 25 pounds, sit or stand 30 minutes to one hour at a time, 8 hours per day, walk at least one block, and perform postural activities at least occasionally.  R. 16-17.  This resulted in a finding of an ability to do a significant range

of light and sedentary work.  R. 18.  Using the "grids,"[1] a finding that Plaintiff is not

disabled was made.  R. 18.  The same finding was also supported by the vocational

expert's testimony that a person with Plaintiff's skills and residual functional capacity

could work as a parking lot attendant.  *Id.*

Plaintiff contends that the Administrative Law Judge's decision is not supported

by substantial evidence in the record.   He also argues that the Administrative Law

Judge did not properly follow the Eleventh Circuit pain standard to evaluate Plaintiff's

testimony as to the degree of pain he experiences.  The two issues should be

considered together.

Pain which is reasonably attributed to a medically determinable impairment is

relevant evidence for determining residual functional capacity.  Social Security

Ruling 96-8p, p. 4.  Pain may affect either exertional or non-exertional capacity, or

both.  *Id.*, p. 6.  The standards for evaluation of pain testimony are well-established:

> The Secretary must consider a claimant's subjective testimony of pain if
> she finds evidence of an underlying medical condition, and either (1)
> objective medical evidence to confirm the severity of the alleged pain
> arising from the condition, or (2) that the objectively determined
> medical condition is of a severity which can reasonably be expected to
> give rise to the alleged pain.

Foote v. Chater, 67 F.3d 1553, 1560 (11th Cir. 1995) (citations omitted).  "A

claimant's subjective testimony supported by medical evidence that satisfies the

pain standards is itself sufficient to support a finding of disability.  Indeed, in certain

---

[1] At step 5 the Commissioner may in certain cases rely upon the "grids," the
Medical-Vocational Guidelines, 20 C.F.R. § 404.1569, and appendix 2 to subpart P,
to carry his burden of proving that there are jobs which the Plaintiff can do despite
his inability to return to his past relevant work.

situations, pain alone can be disabling, even when its existence is unsupported by objective evidence."  *Id.* at 1561 (citations omitted).

> If the ALJ decides not to credit a claimant's testimony as to her pain, he must articulate explicit and adequate reasons for doing so.  Failure to articulate the reasons for discrediting subjective pain testimony requires, as a matter of law, that the testimony be accepted as true.

*Id.* at 1561-1562, *citing*, Cannon v. Bowen, 858 F.2d 1541, 1545 (11th Cir. 1988).

"[W]here proof of a disability is based upon subjective evidence and a credibility determination is, therefore, a critical factor in the Secretary's decision, the ALJ must either explicitly discredit such testimony or the implication must be so clear as to amount to a specific credibility finding."  *Id.* at 1562, *quoting*, Tieniber v. Heckler, 720 F.2d 1251, 1255 (11th Cir. 1983).  Finally, the reasons articulated for disregarding the claimant's subjective pain testimony must be based upon substantial evidence. Jones v. Department of Health and Human Services, 941 F.2d 1529, 1532 (11th Cir. 1991).

An x-ray of Plaintiff's spine on May 27, 1999, revealed narrowing of disc space at L4-L5 and some arthritic changes.  R. 309.  A lumbar MRI on May 27, 1999, revealed evidence of the discectomy noted above, but no evidence of disc herniation recurrence.  R. 308.  At L3-L4 there was some annulus bulging.  *Id.*  The physician who read this MRI the next day noted that two months after the last discectomy, on April 29, 1999, Plaintiff had been released to return to light duty, but his employer, Sallie Mae, would not take him back with these restrictions.  R. 307. The examining physician found no evidence of paravertebral muscle spasm, and only moderate limitation of back flexion and extension, secondary to pain, without

radiculopathy.  *Id.*  Plaintiff had no motor weakness, and straight leg reflex was 75 degrees with some mild low back and leg pain.  *Id.*  The physician prescribed Lodine and a molded back brace.  *Id.*

A myelogram on January 19, 2000, revealed "multiple bulging discs from L2 through L5, [with] no significant nerve root compression or spinal stenosis."  R. 142. It was noted that Plaintiff continued to complain of lower back and left leg pain, but had no numbness, weakness, or parasthesias.  *Id.*  Examination on February 3, 2000, revealed no evidence of paravertebral muscle spasm, and only moderate limitation of back movement with pain, without radiculopathy.  *Id.*  Plaintiff was to start physical therapy.  *Id.*

On June 27, 2001, Plaintiff was seen again by his treating physician.  R. 134.  On examination he was found to be tender in the mid and lower lumbar regions and both SI joints, and had some increased lumbar paraspinous muscle spasm.  *Id.*  He had limitation to bending forward at 60% of normal, and 50% of normal extension.  *Id.*  He had no motor weakness.  R. 133.  The impression was low back pain, SI joint and facet area pain, myofascitis of the lumbar spine, but with no clinical evidence of nerve root compression.  R. 133.  "Quite a lot of inflammation involving his facet joints, SI joints, and some myofascitis with trigger point tenderness" was noted.  *Id.*  Trigger point injections were recommended.  *Id.*

An NCV and EMG examination conducted on December 15, 2001, found "increased insertional activity with positive waves and fibrillation potential in the lower lumbar paraspinous region."  R. 125.  The impression was that these findings were consistent "with posterior primary rami spinal root irritation in the lower lumbar spinuous

region."  *Id.*  When examined by his physician five days later, Plaintiff had no

paravertebral muscle spasm, "some moderate limitation of back flexion and extension,

secondary to pain," but again the pain was nonradicular.  R. 130.  Plaintiff had no motor

weakness, and straight leg reflex caused mild low back pain at 75 degrees.  *Id.*  The

same degree of degeneration of the lumbar spine noted above was again noted in an

MRI scan on December 12, 2001, that is, "some epidural fibrosis, some moderate

neural formina stenosis bilaterally at L5-S1, [and] no significant nerve root compression

or spinal stenosis."  *Id.*

Plaintiff testified at the administrative hearing that he can no longer work due to

his back problems and a hernia.  R. 543.  He also said that his ability to work was

limited because he had arthritis in his shoulders and his left leg "goes numb."  R. 544.

He said that he can sit or stand for only about 20 to 30 minutes.  R. 545.  He said he

can walk "maybe a block" and he tries not to lift more than a gallon of milk.  *Id.*  Plaintiff

said he started carrying a cane because sometimes his leg goes numb, and sometimes

he wears the back brace which had been prescribed in 1999.  R. 548.  Plaintiff said that

the last time he drove a motor vehicle was in 2000, and he no longer has a driver's

license due to his blood pressure and dizzy spells.  R. 538-539.

The Administrative Law Judge determined that Plaintiff's testimony was not fully

credible.  She first reasoned that "no treating or examining physician has indicated that

the claimant has limitations which preclude him from performing light work."  R. 17.  This

finding is supported by substantial evidence in the record.  The only complete functional

capacity evaluation identified by the parties in this record is one dated August 13, 1999,

from the prior application record.  R. 334.  Plaintiff at that time was deemed to be

capable of medium work, that is, work requiring lifting of 30 pounds occasionally, and 20 pounds frequently, with frequent sitting and standing.  *Id*.  Also, Plaintiff's treating physician at one time released him back to work with the only restriction that he limit his exertions to light work.

The Administrative Law Judge noted that although Plaintiff has a 60% VA disability rating, the VA also found that he was not unemployable.  R. 17.  That indeed is the status of the VA findings.  R. 76, 78, 80.  A disability rating by the Veteran's Administration is entitled to great weight.  Brady v. Heckler, 724 F.2d 914, 921 (11th Cir. 1984).  Plaintiff argues that the VA disability findings are limited to service connected disability.  He implies that he may have other disabilities that are not service connected. This argument is not persuasive. The primary disability at issue now is degenerative disc disease and arthritis in the left shoulder, and both of those impairments were fully evaluated by the Veteran's Administration as service connected disabilities.  R. 78-79. Thus, this aspect of the ALJ's analysis is supported by substantial evidence in the record.

The ALJ also discounted Plaintiff's pain testimony because "[t]he claimant no doubt has some pain and limitations as a result of his impairment; however, he takes medication for his pain and there is no evidence of any side effects.  Further, he apparently continues to do some hunting and fishing and housework."

The first of these findings is supported by substantial evidence in the record. Plaintiff has not cited any portion of the medical record to indicate any serious side effects from pain medications.

The evidence of daily activities is much less weighty evidence, but the ALJ properly considered it.  Evidence of daily activities may be considered so long as it is considered with all of the evidence in the record.[2]  In May, 2001, Plaintiff reported that he had been mowing his lawn on a riding mower, and he thought this activity might have caused increased back pain.  R. 135.  Plaintiff also reported that his impairments limited his ability to fish and hunt, and he needed help to load his boat.  R. 104.  Plaintiff said that he could prepare a meal, but standing and use of his arms intensified the pain.  R. 103.  He said he could not vacuum or mop without severe pain, and when shopping he was limited due to limitations in walking.  *Id*.  In sum, ability to hunt, fish from a boat, and ride a mower to mow a lawn, even with limitations, shows an ability to move and do

---

[2] While not proper at step 1, it is appropriate for the Administrative Law Judge to consider a claimant's daily activities at steps 4 and 5 of the evaluation process. Macia v. Bowen, 829 F.2d 1009, 1012 (11th Cir. 1987).  If daily activities are to be considered, however, the Administrative Law Judge must do so in the context of all of the evidence in the record:

> We have consistently held that in ascertaining whether the Secretary's findings are supported by substantial evidence, we do not consider only those parts of the record that support those findings, but rather must "view the entire record and take account of evidence in the record which detracts from the evidence relied on by the [Secretary]."

Parker v. Bowen, 793 F.2d 1177, 1180 (11th Cir. 1986).  Parker found the Administrative Law Judge's reliance upon Plaintiff's "daily activities" to discount her testimony as to pain to have been flawed for failure to consider the claimant's testimony that she had to lie down after two hours of such work.  *Id*.  Similarly, Foote v. Chater, 67 F.3d 1553 (11th Cir. 1995), held that a conclusory citation to a claimant's "daily activities" as a basis for failing to believe her testimony as to pain was insufficient where there was a medical condition that reasonably could have given rise to the pain described, and, although she testified that she cooked and shopped for herself, she had trouble putting on her clothing.  67 F.3d at 1561.

work greater than described in Plaintiff's testimony.  This is not evidence which must be

completely discounted.

Finally, the ALJ reasoned:

> Furthermore, the claimant previously was able to secure a finding of disability as
> a result of inability to perform even sedentary work at a time when a capacity
> evaluation showed that he could perform medium work.  Failure to disclose the
> evaluation adversely affects the claimant's credibility and strongly suggests a
> willingness to mislead the trier of fact, in that case, Judge Romo.

R. 17.  Plaintiff has not addressed this finding.  ALJ Romo did find Plaintiff incapable of

doing sedentary work, yet the record contained a residual functional capacity evaluation

that found that Plaintiff was capable of doing medium work.  The evidence to support

the finding that Plaintiff "failed to disclose" this to ALJ Romo has not been located in this

record.  Plaintiff was permitted to file a reply to Defendant's responsive memorandum,

and Plaintiff has not argued that this subsidiary finding was not supported by substantial

evidence in the record.  Since Plaintiff has the burden of proof, it must be assumed that

the finding is supported by substantial evidence in the record.[3]  If true, this is additional

substantial evidence in the record to discount Plaintiff's testimony.

Even if it were not evidence directly impinging upon Plaintiff's credibility,

however, the residual functional capacity assessment is substantial evidence that

Plaintiff's residual functional capacity is greater than he described in his testimony.  This

is also supported by the finding noted above that Plaintiff's treating physician released

him to return to light duty.

---

[3] See doc. 5: "Plaintiff has the burden to demonstrate that Defendant's decision to
deny benefits was incorrect. . . .  Failure of Plaintiff to file a memorandum specifically
addressing the claimed error as instructed by this order will be deemed to be a failure to
prosecute . . . ."

In summary, the Administrative Law Judge correctly applied the law of this circuit for the evaluation of pain testimony.  She articulated her reasons for her findings, and those reasons are supported by substantial evidence in the record.  There were no objective findings of medical evidence to confirm the alleged severity of the pain arising from the condition.  While the objective examinations showed that Plaintiff has some limitations of flexion and extension due to pain, he had no muscle weakness and the only residual functional capacity evaluation in the record assigned a medium work rating.  Nor can it be said that it was error for the ALJ to conclude that the objectively determined medical condition is of a severity which can reasonably be expected to give rise to the alleged pain.  While reasonable persons might differ as to this issue, it cannot be said that the decision of the ALJ lacked the support of substantial evidence in the record, given the VA findings and the residual functional capacity assessment, both of which were relied upon by the ALJ.

Accordingly, it is **RECOMMENDED** that the decision of the Commissioner to deny Plaintiff's application for Social Security benefits be **AFFIRMED**.

**IN CHAMBERS** at Tallahassee, Florida, on April 28, 2005.


**s/     William C. Sherrill, Jr.**
**WILLIAM C. SHERRILL, JR.**
**UNITED STATES MAGISTRATE JUDGE**


## NOTICE TO THE PARTIES

**A party may file specific, written objections to the proposed findings and recommendations within 15 days after being served with a copy of this report and**

recommendation.  A party may respond to another party's objections within 10 days after being served with a copy thereof.  Failure to file specific objections limits the scope of review of proposed factual findings and recommendations.